# BOIES, SCHILLER & FLEXNER LLP

1999 HARRISON STREET · SUITE 900 · OAKLAND, CA 94612 · 510-874-1000 · FAX 510-874-1460

April 16, 2015

**Re**: *Theranos, Inc. v. Becton, Dickinson & Co.*, Case No. 14-cv-04880-WHA

Dear Judge Alsup:

Pursuant to the Court's Supplemental Order, ¶¶ 25 and 26 (Dkt. 27) and Federal Rules of Civil Procedure 26(a) and 37, Theranos, Inc. ("Theranos") hereby moves for an order striking Becton, Dickinson and Co.'s ("BD's") initial disclosures concerning damages, and therefore precluding its claim for damages at trial.

This is a trademark dispute in which BD alleges that Theranos's NANOTAINER mark infringes BD's MICROTAINER marks. BD seeks damages and injunctive relief. On March 11, 2015, the parties exchanged initial disclosures. BD's disclosures were clearly inadequate on the question of its damages. BD wrote only that it would seek the "maximum monetary remedies permitted under 15 U.S.C. § 1117," in "an amount equal to three times the amount of Theranos's profits or three times [BD's] damages, whichever is greater," plus attorneys' fees and interest; it claimed that it was "not presently capable of estimating its damages since the amount is largely up to the discretion of the court." (**Exhibit A**, at 5.) That same day, Theranos wrote to BD's counsel, explaining that BD had not complied with its obligations under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and requesting that BD supplement its disclosures. (**Exhibit B**.)

The parties appeared the next day at a case-management conference, in which the Court admonished the parties to comply with the initial-disclosure rules. The Court even gave BD additional time to cure its deficient disclosures: "Initial disclosures, you've got to do it right. I'm not going to make my speech again. I'll give you until March 31. … I'm going to give you a few extra days to beef up your disclosures." (3/12/2015 Hearing Tr. 12:11–17.) The parties met and conferred in person after the conference, and Theranos's counsel reiterated that BD's alleged damages must be identified and computed with particularity.

BD served revised Rule 26(a) disclosures on March 31. Unfortunately, BD provided nothing more in its revised disclosures than a recitation of broad categories of damages. (**Exhibit C**, at 5.) BD now states only that it will seek "the maximum monetary remedies permitted under 15 U.S.C. § 1117," trebled and with pre-judgment interest, and identified broad, non-specific categories, including BD's "actual damages caused by Theranos's use of the NANOTAINER mark, including [BD's] lost sales and lost profits, the decrease in the value of [BD's] MICROTAINER mark, and the damage to [BD's] goodwill and reputation;" BD's "costs to undertake a corrective advertising campaign to undo the confusion caused by Theranos's infringing conduct;" a "reasonable royalty on Theranos's sales of products and services under its NANOTAINER mark;" "Theranos's profits that are attributable to its use of the NANOTAINER mark;" BD's fees and costs, and "[a]ny other damages to which [BD] is entitled." BD again provided no computation of any measure of damages, and it has produced no documents.

Initial-disclosure requirements are "mandatory and self-executing." *Brandywine Commc'ns Techs., LLC v. Cisco Sys., Inc.*, No. C 12-01669 WHA, 2012 WL 5504036, at *1 (N.D. Cal. Nov. 13, 2012). Any party claiming damages must include a "computation of each category of damages claimed" and "must also make available for inspection and copying as

under Rule 34 the documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered." FED. R. CIV. P. 26(a)(1)(A)(iii).  A party must specify damages "at the outset of litigation," regardless of the fact that discovery is still in its early stages. *Brandywine*, 2012 WL 5504036, at *1–3.  The principles of *Brandywine*, a patent case, hold true in the trademark context; BD is still subject to the requirements of Rule 26.  Indeed, the rationale is stronger:  Unlike in patent cases, a plaintiff has no automatic right to damages for trademark infringement. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407–08 (9th Cir. 1993) (affirming district court's denial of actual damages or other monetary relief, despite finding of infringement), *superseded by statute on other grounds by* Pub.L. No. 106-43, 113 Stat. 218.

BD's Rule 26(a) damages disclosures are insufficient.  For no category of damages has BD provided any computation, or even basic information by which a computation may be drawn.  Nor has BD provided "documents or other evidentiary material on which each computation is based." FED. R. CIV. P. 26(a)(1)(A)(iii).  This failure may be due to the speculative nature of BD's alleged damages; indeed, several categories BD invokes are unavailable as a matter of law.

*Lost sales and lost profits.*  BD purportedly seeks "lost sales and lost profits[.]"  The facts that would support such an award are entirely within BD's control.  In the patent context, the party claiming lost-profits damages must identify the "extent of loss of its own sales of its own products in an approximate dollar amount and state how that amount was calculated.  To be more specific, it should be able to identify each of its own products that compete … with the accused products and explain how sales of its own specified products have been affected by the alleged infringement." *Brandywine*, 2012 WL 5504036, at *1.  The same principle applies in the trademark context.  Yet BD's disclosures fail to provide any of this required information.  The reason for this is unsurprising:  Theranos does not compete directly with BD.  While BD allegedly sells its Microtainer-branded devices to doctors' offices, hospitals, and pathology laboratories, (Counterclaim, Dkt. 9, ¶ 14), Theranos uses the Nanotainer devices <u>itself</u> while performing innovative laboratory services.  (*See id.* ¶¶ 20, 23.)  BD cannot recover lost profits under the circumstances. *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996) (award of lost profits based on intended future competition was too speculative).

*Decrease in value of the mark; damage to goodwill and reputation.*  While BD seeks damages for "the decrease in the value of" its mark, it does not identify the value of its mark, nor how Theranos's activities have decreased it, nor how Theranos's activities allegedly damaged its "goodwill and reputation."  Information about the alleged value of these assets and how Theranos's activities allegedly affected them are entirely within BD's control.  Without concrete proof of the value of these assets and an explanation of how Theranos's non-competitive activities harmed them, generalized allegations like these are purely speculative. *See Goldie's Bookstore, Inc. v. Sup. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (trial court's findings that plaintiff would lose goodwill and "untold" customers held speculative).

*Corrective advertising.*  It is doubtful that BD could obtain damages for corrective advertising in this case.  Awarding the costs of corrective advertising is an "extraordinary remedy" that has been "criticized as arbitrary and inefficient." *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 CIV. 7203 (DLC), 2006 WL 1359955, at *2 (S.D.N.Y. May 18, 2006); *see also Int'l Oddities v. Record*, No. CV 12-3934-CAS VBKX, 2013 WL 3864050, at *14 (C.D. Cal. July 22, 2013) ("an award of compensatory damages based on potential 'corrective advertising' costs must be tied to 'non-speculative evidence' that the goodwill associated with

the plaintiff's mark has actually been diminished by the defendant's conduct."). Moreover, BD's initial disclosures show that such a campaign is only prospective; presumably, BD has the financial wherewithal to conduct such a campaign now rather than in the future, if there truly were something to be corrected. *Cf.* Restatement (Third) of Unfair Competition § 36 cmt. f (1995) ("a claim for expenditures to be undertaken in the future should be subject to greater scrutiny"). Nonetheless, an estimate of the nature and cost of the advertising BD anticipates must, at the very least, be identified pursuant to Rule 26(a).

*Reasonable royalty.* A reasonable royalty as a measure of damages are unavailable here as a matter of law. Unlike the Patent Act, 35 U.S.C. § 284, the Lanham Act does not authorize a reasonable royalty. Instead, such a measure would only be available if BD could show (1) that it actually lost royalties, and (2) the amount of that loss. *Trovan, Ltd. v. Pfizer, Inc.,* No. CV-98-00094 LGB MCX, 2000 WL 709149, at *17 (C.D. Cal. May 24, 2000) (vacating royalty award). This scenario usually arises in cases where the trademark owner has a practice of licensing its mark. By contrast, the "mere possibility of a future license cannot create an issue of fact as to the availability of lost royalties, any more than speculation about the possibility of lost sales can create an issue of fact as to lost profits." *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576, at *6 (N.D. Cal. July 14, 2011); *South Cone, Inc. v. Timex Corp.*, No. 99-CV-2384-L(AJB), 2002 WL 34450329, at *1 (S.D. Cal. Apr. 10, 2002) (finding lost royalty theory "lack[s] any sort of reliability" with no "established history of licensing"). Here, BD has not licensed the MICROTAINER mark. A royalty is thus unavailable as a measure of damages. Even if it were available, however, BD should "already be in a position to state the claimed royalty rate and state the claimed royalty base, and then multiply the two for a total, specifying the information by year. This can and should be done now even though subsequent discovery may eventually warrant a modification of the calculation." *Brandywine*, 2012 WL 5504036, at *2. Comparable licenses should be identified, for example. BD has still not done so.

*Theranos's profits.* Although the necessary inputs to a calculation of Theranos's profits are admittedly under Theranos's control, BD should at least have provided a specific explanation of the kinds of profits it will seek, and an explanation as to why it cannot calculate them. *See id.* at *3. BD should have also explained why Theranos's profits are attributable to the NANOTAINER mark (which does not even appear on the vials or on packaging) as opposed to Theranos's other innovative services. *Cf. Computer Access Tech. Corp. v. Catalyst Enters., Inc.*, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003) ("the law requires plaintiffs to distinguish between damages caused by lawful and unlawful conduct").

BD has been given multiple opportunities to rectify its deficient disclosures. Preclusion is warranted after failure to comply with Rule 26 despite multiple warnings. *See Brandywine*, 2012 WL 5504036, at *1, *3; *see also* FED. R. CIV. P. 37(c)(1). Theranos thus respectfully requests that the Court strike BD's initial disclosures and preclude its claim for damages at trial.

Respectfully,

 */s/ Parker Bagley*
Parker Bagley                                       Jedediah Wakefield
Meredith Dearborn                                   Sean Wikner
BOIES SCHILLER & FLEXNER LLP         FENWICK & WEST LLP
Counsel for Theranos, Inc.