# FROSS ZELNICK LEHRMAN & ZISSU, P.C.

**Partners**
Ronald J. Lehrman
Stephen Bigger
Roger L. Zissu
Richard Z. Lehv
David Ehrlich
Susan Upton Douglass
Peter J. Silverman
Lawrence Eli Apolzon
Barbara A. Solomon
Mark D. Engelmann
Nadine H. Jacobson
Andrew N. Fredbeck
Craig S. Mende
Allison Strickland Ricketts
John P. Margiotta
Lydia T. Gobena
Carlos Cucurella
James D. Weinberger
David Donahue
Nancy E. Sabarra
Charles T. J. Weigell III
Laura Popp-Rosenberg
Cara A. Boyle
Karen Lim

**Senior Counsel**
Janet L. Hoffman

**Counsel**
James D. Silberstein
Joyce M. Ferraro
Robert A. Becker
Michael Chiappetta
Tamar Niv Bessinger
Nancy C. DiConza

**Associates**
Jason Jones
Leo Kittay
Todd Martin
Robin N. Baydurcan
Sherri N. Duitz
Amanda B. Agati
Jennifer Insley-Pruitt
Emily Weiss
Ashford Tucker
Jessica Meiselman
Erica Gould
Matthew Frisbee
Celadon Whitehurst
Stacy L. Wu
Hindy Dym
Katherine Lyon Dayton
Maritza C. Schaeffer

April 21, 2015

Re:  *Theranos, Inc. v. Becton, Dickinson & Company*, No. 14 Civ. 4880 (WHA)

Dear Judge Alsup:

Becton, Dickinson & Company ("BD") submits this letter in response to Theranos, Inc.'s April 16, 2015 letter in which Theranos asks the Court to strike BD's initial disclosures concerning damages and preclude BD from recovering damages on its claim that by adopting the NANOTAINER mark, Theranos is willfully infringing BD's incontestable, federally registered MICROTAINER mark, which BD has used for forty-five years.

As an initial matter, because Theranos contacted the Court prematurely, its motion should be denied, and Theranos should be directed to meet and confer by phone with BD's counsel. After receiving an initial complaint about the sufficiency of its disclosures from Theranos, BD served its amended initial disclosures on March 31st.  Theranos never raised any objection to those amended disclosures before contacting the Court on April 16th.  This not only violates paragraph 25 of Your Honor's Supplemental Order, it also risks unnecessarily multiplying costs and the burden of this litigation on the parties and the Court.  Moreover, it would set a dangerous precedent to involve the Court at this stage, before Theranos's counsel has even picked up the telephone to discuss their alleged complaints with BD's counsel a single time.

Turning to the substance of Theranos's procedurally improper complaints, Theranos is mistaken that BD has not satisfied its obligations under Federal Rule of Civil Procedure 26(a).  The purpose of initial disclosures is to prevent "unfair surprise, sandbagging, and trial by ambush."  *FTC v. AMG Servs., Inc.*, No. 12 Civ. 536 (GMN), 2014 WL 317781, at *7 (D. Nev. Jan. 28, 2014) (citations and internal quotation marks omitted).  Thus, while a party has a continuing obligation to "update its disclosure and provide greater detail as to its calculations as discovery progresses," there is no obligation to provide a "precise calculation" at the beginning of the litigation.  *City and Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003) (denying defendants' demand for precise calculation where "many of the documents which are likely to inform the calculation remain in Defendants' hands and some level of expert analysis may be required").  The drafters of Rule 26(a) recognized this by exempting categories of damages that "depend[] on information in the possession of another party or person."  *See* Fed. R. Civ. P. 26(a) Advisory Committee's Notes.  Here, it is abundantly clear that Theranos will not be sandbagged because, as its letter demonstrates, Theranos very much understands the theories under which BD is seeking damages.[1]

---

[1] With respect to each category of damages, Theranos makes arguments as to why BD is not entitled to the category as a matter of law.  Such arguments, which are based on purported facts about Theranos for which Theranos offers no evidentiary support, have no proper place in a discovery letter concerning *initial disclosures*.  BD addresses these arguments here only to the extent necessary to show that BD's initial disclosures are proper.

{F1675108.2 }

866 United Nations Plaza at First Avenue & 48th Street  |  New York, New York 10017
Phone  212.813.5900  |  Fax  212.813.5901  |  www.frosszelnick.com

The Honorable William Alsup
April 21, 2015
Page 2

BD's lost sales and profits:  At this stage of the litigation, before discovery responses have been provided by either party, there is no way for BD to calculate the extent of the sales it lost due to Theranos's infringement of its MICROTAINER mark.  BD anticipates that it may rely, in part, on the fact that its sales of MICROTAINER products have decreased, and it is prepared to produce documents showing the amount of the aforementioned sales decrease once a protective order is entered.  But Theranos's counsel promised to provide a draft protective order three months ago and has not done so, and it has ignored every subsequent request for the draft, including one sent with BD's amended initial disclosures and another sent after Theranos filed its letter motion.

The fact that BD's sales of MICROTAINER products decreased likely does not capture the full extent of lost sales—BD needs discovery from Theranos to complete the picture.  For example, we expect to find in discovery that Theranos lured potential customers away, or that existing customers of BD who might have planned a larger order than the prior year decided to give an order to Theranos instead.  We also do not yet know the date on which Theranos commenced its infringing sales, or the precise contours of the parties' overlap in consumers.  Until BD learns this information in discovery, it will not be possible for BD to calculate lost sales, and Rule 26 does not require BD to guess. Of course, as the case progresses BD will abide by its obligation to supplement its initial disclosures.

Reasonable royalty:  Theranos devotes most of its argument to its erroneous position that BD is not entitled to reasonable royalty damages as a matter of law because BD purportedly does not license its MICROTAINER mark.  But the Ninth Circuit has not held that a reasonable royalty award is available only where the plaintiff has licensed its mark.  Moreover, "even in cases without prior licensing agreements courts have awarded or approved 'reasonable royalty' damages if the evidence provides a sufficiently reliable basis from which to calculate them."  *QS Wholesale, Inc. v. World Mtkg., Inc.*, No. 12 Civ. 0451 (RNBx), 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013) (citation and international quotation marks omitted) (collecting cases).  Among other things, BD expects to engage an expert to develop evidence of an appropriate royalty rate based on comparable licenses between other parties for the relevant products or related products.  As such, BD will be in a better position to provide this royalty rate when it serves its expert reports.  *See Tutor-Saliba*, 218 F.R.D. at 222.  BD intends to use Theranos's sales figures as the royalty base, but of course Theranos has yet to produce such information to BD.

Theranos's profits:  The Lanham Act unequivocally provides that with respect to Theranos's profits, BD's only obligation at trial is to present evidence of Theranos's sales, and it is Theranos's burden to prove costs or other deductions (if any).  *See* 15 U.S.C. § 1117(a); *see also Craigslist, Inc. v. Kerbel*, No. 11 Civ. 3309 (EMC), 2012 WL 3166798, at *18 (N.D. Cal. Aug, 2, 2012) (awarding all of defendant's sales as profits where plaintiff introduced evidence of infringer's sales and infringer failed to introduce evidence of costs or other deductions).  Theranos admits that the necessary information for BD to assess Theranos's sales is solely within Theranos's control, but then states that BD has to explain why it cannot calculate Theranos's profits.  BD should not be compelled to state the obvious, particularly when Theranos itself has already stated it.  When BD receives Theranos's sales figures

The Honorable William Alsup
April 21, 2015
Page 3

through discovery, BD will amend its initial disclosures to reflect that it is seeking that entire amount, subject to any costs or other deductions that Theranos is able to prove at trial.

Damage to value of MICROTAINER mark and BD's goodwill and reputation: This category of damages will depend on the work of an expert. *See Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *8 (D. Or. Sept. 12, 2008) (rejecting challenge to jury award on theory that trademark infringer damaged the distinctiveness, perceived quality, positive consumer associations, and consumer loyalty" built up by trademark owner, where trademark owner "relied primarily on two experts … to provide evidence of the harm suffered by its marks"); *see also Tutor-Saliba*, 218 F.R.D. at 222. As such, BD will be in a better position to provide a computation when it serves its expert reports.

Corrective advertising: The goal of BD's corrective advertising campaign will be to counter Theranos's use of the confusingly similar NANOTAINER mark. But it cannot formulate the campaign until it knows the full extent of Theranos's infringement. As such, BD will provide Theranos with the estimated costs of the campaign once it learns the full extent of Theranos's infringement through discovery and formulates the campaign.

\*   \*   \*

We return in the end to Theranos' failure to meet and confer. BD is mindful of the obligations imposed by FRCP 26, is familiar with Your Honor's holding in *Brandywine Communications Technologies, LLC v. Cisco Systems, Inc.*, No. 12 Civ. 1669 (WHA), 2012 WL 5504036 (N.D. Cal. Nov. 13, 2012), amended its initial disclosures in good faith, and believes that it has complied fully with its discovery obligations at this point. That said, if Theranos truly believes that there are deficiencies remaining, BD is prepared to meet and confer to try to address its concerns. But Theranos never made any effort to resolve this dispute before involving the Court, and has come to the Court seeking preclusion rather than amendment—a request that has no grounding in law. *See id.* at *3 ("At this point, [preclusion] could be too drastic a remedy."); *Tutor-Saliba*, 218 F.R.D. at 220 (noting cases that have precluded evidence for failure to make adequate disclosures involve "extreme situations," such as plaintiff claiming $30 million more in damages on the eve of trial).

Based on the foregoing, we request that the Court deny Theranos's motion for preclusion, and amend the Court's April 20th Order to require that the parties meet and confer by phone for no less than one hour by no later than Thursday, April 24th to address any alleged deficiencies in BD's initial disclosures. We also request that Theranos be directed to provide a draft protective order to BD by no later than 5 p.m. on April 24th. Only if the parties reach a true impasse should they resort to involving the Court.

Respectfully submitted,

John P. Margiotta
*Counsel for Becton, Dickinson & Company* (admitted *pro hac vice*)